**In re CAMPO ELECTRONICS, INC., Appellant,**

v.

**John K. ROSS, Appellee.**

**No. Civ.A. 98 CV 2043.**

United States District Court, E.D. Louisiana.

Dec. 7, 1998.

Leslie A. Collins, Heller, Draper, Hayden & Horn, LLC, New Orleans, LA, Douglas Scott Draper, Heller, Draper, Hayden & Horn, LLC, New Orleans, LA, for Campo Electronics, Appliances and Computers, Inc.

David John Messina, Andree Matherne Cullens, Taylor, Porter, Brooks & Phillips, New Orleans, LA, for John Ross.

## *OPINION*

LEMMON, District Judge.

The judgment of the bankruptcy court in favor of John K. Ross and against Campo Electronics, Inc., (Campo), is **AFFIRMED** for the following reasons.

## I. BACKGROUND

This matter came before the bankruptcy court on a Motion for Payment of Administrative Claim filed by John K. Ross, a former employee of the debtor, Campo Electronics. There were several objections filed to the motion, including one by Campo. On December 1, 1997, a hearing was held on the motion and, on March 5, 1998, decision was rendered in favor of Ross.

On April 14, 1997, Campo, contemplating a bankruptcy filing under Chapter 11, entered into an employment agreement, with Ross, who was employed by Campo as the Vice–President of Marketing. By Campo's own admission, the employment agreement with Ross as well as several other key employees of Campo was made in order to assure that these employees would remain with the company during its anticipated bankruptcy proceedings. The employment agreement provided Ross with an annual salary of $125,000, a one-time performance bonus of $25,000.00, and an incentive bonus to be paid within 15 days of the first anniversary of the date of the agreement upon the satisfaction of certain conditions. The employment agreement also contained a "Severance or Termination Pay and Benefits" clause. The relevant sections of that clause are as follows:

8....

If the employment of the Employee is terminated at any time during the term of this Agreement (i) by him for Good Reason (as defined in Paragraph 9 hereof) or (ii) by the company for any reason other than for Cause (as hereafter defined), the Company shall be obligated to pay him the severance pay and benefits described in Appendix D hereto ...

in lieu of all other amounts and benefits provided by this Agreement.

\*    \*    \*    \*    \*    \*

9. **Termination by the Employee for Good Reason**

a. The termination by the Employee of his employment for "Good Reason" during the term of this Agreement shall be deemed a justifiable termination of his employment and shall excuse him from the obligation to render services under or relating to this Agreement.... As used herein, the term "Good Reason" means:

1. the occurrence of any of the following: (i) a change by the Company in his status, title or position(s) as an officer of the Company which does not represent a promotion from or enhancement of his status, title or promotion ... provided in each such case described in clauses (i), (ii), (iii), or (iv) that the same continues for 10 days after written notice thereof by the Employee to the Company specifying the alleged occurrence; or

2. a reduction in his salary rate or a failure of the Company to pay the Employee when due any installment of salary and/or any bonus required pursuant to Appendix A ...

10. **Notice of Termination.** Any purported notice of termination by the Company or the Employee shall be communicated in a writing delivered to the other party ... Any such Notice of Termination that purports to terminate Employee's employment for Cause of Good Reason shall specify the termination provision relied upon by the party giving such notice and shall set forth in detail such facts and circumstances claimed to provide a justified basis for termination under the provision(s) so indicated.

As early as May 13, 1997, Ross became concerned with the stability of Campo and made inquiries with a representative of Home Depot, Inc. (HDI) regarding the possibility of employment. On June 5,

1997, at the request of HDI, Ross submitted to a pre-employment drug test. On June 4, 1997, Campo filed for protection under Chapter 11 of the Bankruptcy Code, and on June 9, 1997, Campo filed a "Motion to Assume Employment Contract with John K. Ross" seeking to enforce the employment agreement with Ross. The motion stated that "[t]he retention by Debtor of its key employees is essential to Debtor's ability to smoothly continue operations and finalize development of a plan of reorganization."

On June 18, 1997, William Wulfers became Campo's new Chief Executive Officer. He immediately began restructuring the upper management of the company. Shortly thereafter, Ross was informed by Wulfers that, as of August 31, 1997, corporate reorganization would result in the elimination of the position of the Vice–President of Marketing. Wulfers offered Ross a position as Regional Vice–President, which Ross rejected. Testimony at the hearing established that although the salaries of the two positions were the same, the Regional Vice–President's position was without the potential for a bonus and was a "field position," not as prestigious as the "corporate position" of the Vice–President of Marketing.

On June 20, 1997, Dick Sullivan, Senior Vice–President of Advertising with HDI, wrote a letter to Ross confirming HDI's offer and Ross's acceptance of employment with HDI as Director of Advertising at an annual salary of $150,000.00. On June 30, 1997, Ross wrote a letter to Wulfers rejecting the Regional Vice–President position, stating:

> Despite the opportunities for repackaging my career with store-line management experience, I do not feel this is the best direction for me at this time. I am also concerned that moving someone with my background into the position might not be the best for the company right now. The Regional VP's will need to hit the ground running, not be learning their way through the operations side of the business.

Ross's letter also stated that his last day would be July 18, 1997. There is no evidence that Campo, either before or after his June 30 termination letter, offered Ross either his original position or any other position at the same salary and benefits contained within the employment agreement. Ross's last day of employment with Campo was July 18, 1997.

The Bankruptcy Court awarded Ross $62,500.00 in severance pay he asserted was owed him under the employment agreement. The bankruptcy judge designated that amount as an administrative expense of the debtor's estate under 11 U.S.C. § 503(b)(1)(A). Campo argues that Ross is not entitled to severance pay under the terms of the employment agreement and, even if he is, the severance pay should be considered an unsecured claim rather than an administrative claim with priority over Campo's other creditors.

## II. DISCUSSION

The Bankruptcy Court's findings of fact are reviewed by the district court under a clearly erroneous standard. *See In re T–H New Orleans, Ltd. Partnership,* 10 F.3d 1099, 1101 (5th Cir.1993). Conclusions of law are reviewed *de novo. Id.*

Campo contends that Ross's June 30, 1997, termination letter did not comply with the express terms of the employment agreement because it did not specify the terminating provision relied on, provide adequate detail as to the facts and circumstances justifying the termination, or provide 10 days in which Campo could cure the alleged default. Campo alleges that Ross violated his duty of good faith because Campo's plans to restructure its upper management had little or no bearing on Ross's future plans with HDI.

The Bankruptcy Court found that Ross terminated his employment with Campo for "Good Reason" as defined in the employment agreement because the offer of the Regional Vice–President position was a change in Ross's status and

position with the company that did not "represent a promotion from or enhancement of his status, title and position."

At the hearing, Charles Gibson, who had been the Chief Operating Officer, testified to the following: the Vice–President of Marketing was a "corporate position" with the company, whereas the Regional Vice–Presidency was a "field position," and the level of responsibility of an executive officer was greater than that of a Regional Vice President because the executive position involved more strategic and company-wide decisions while the regional position involved only in-store tactical decisions. Ross testified that he considered the level of management and decision-making authority to be lower for a Regional Vice–President. While Wulfers testified the Regional Vice–President would have input to the executive level in decision making, he admitted that the level of responsibility was less than Ross previously held as Marketing Vice–President.

James Warren, a former Vice–President of Merchandising, also testified that, during the restructuring, he was offered one of the two Regional Vice–President positions. He declined and accepted a severance package because he viewed the new position as a "lower position in that you were out in the field executing the company's plan versus in the corporate office helping to design the plan."

The Bankruptcy Court's finding that the elimination of Ross's position as Vice–President and the offer to him of a Regional Vice–President position was a "change by the company in [Ross's] status, title or position(s) as an officer not constituting a promotion from or enhancement of his status" as outlined in Paragraph 9(a)(1)(i) of the employment agreement, is not clearly erroneous.

[2] The Bankruptcy Court's finding that Ross's June 30, 1997, termination letter adequately complied with the terms of the employment agreement is not clearly erroneous. While the letter does not specifically cite Paragraph 9(a)(1)(i), it explains the basis for termination of his employment, and states the reasons behind Ross's rejection of the Regional Vice–Presidency, i.e. the position would be "repackaging my career with store-line management." In addition, Wulfers and Campo's other officers had discussed Ross's change in position and Ross had orally rejected the Regional Vice–President position weeks in advance of his formal termination. Ross testified that Wulfers was unsurprised by and understood Ross's decision to decline the position and to seek employment elsewhere, but made it clear that "no other position" was available.

■ The interpretation of a contract is a matter of law, which this Court reviews *de novo*. *See American Totalisator v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993). Campo argues that Ross failed to comply with the employment agreement provision that Campo have ten days within which to remedy the alleged default. However, Ross's June 30 termination letter informing Campo of a July 18 termination gave Campo more than ten days notice of his termination date. During this period Campo did nothing to attempt to remedy the basis for Ross's termination. Accordingly, Campo has not demonstrated that there is error in the Bankruptcy Court's finding that the June 30, 1997 letter constituted adequate notice under the employment agreement.

■ Campo also argues that Ross's actions in looking for other employment while employed at Campo were a breach of his good faith obligation. The Bankruptcy Court found no evidence of fraud, deception or sinister motive on the part of Ross was presented. It appears that Ross was simply looking out for his best interests in the face of his employer's financial troubles and subsequent restructuring. The restructuring resulted in the elimination of Ross's position, and triggered the application of the severance pay provision of the employment contract. The Bankruptcy Court's legal conclusions were not in error.

■ The Bankruptcy Court did not err in designating Ross's severance pay as an administrative expense of the debtor's estate. Section 507(a)(1) provides that "[f]irst [priority is given to] administrative expenses allowed under section 503(b) of this title ..." 11 U.S.C. § 507(a)(1). According to section 503(b)(1)(A), administrative costs include the "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). Based upon this statutory mandate, employment-related benefits, such as severance pay, have been deemed to be a form of "wages" which may be entitled to administrative expense priority if incurred during the administration of a bankruptcy case. *Straus–Duparquet, Inc. v. Local Union No. 3 Int'l Bhd. Elec. Workers*, 386 F.2d 649, 651 (2d Cir.1967).

The First, Third and Ninth Circuits have held that severance pay is subject to administrative expense priority only when such payment is due in lieu of notice of termination, or if severance pay is earned post-petition. In these circuits, severance pay based upon length of service which is earned pre-petition is designated an unsecured claim.[1] However, these Courts of Appeals did not consider the issue of whether severance pay, offered to employees as an incentive to continue working with a financially troubled company, should be given priority status.

Contrary to the First, Third and Ninth Circuits, the Second Circuit has held that the right to severance pay arises on the date of termination and that the entire amount is entitled to administrative expense priority under section 507(a). *In re W.T. Grant Co.*, 620 F.2d 319 (2d Cir.) *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d. 839 (1980). The Second Circuit has reasoned that "severance pay is compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and that it is therefore 'earned' when the employees are dismissed." *See Trustees of Amalgamated Ins. Fund*, 789 F.2d at 104 (citing, *W.T. Grant*, 620 F.2d at 320–321). In *In re Child World, Inc.*, 147 B.R. 847, 852 (Bankr.S.D.N.Y.1992), the Court stated that there would be "no question that had the debtor assumed the key employee contracts during the post-petition period, the compensation payable thereunder would be treated as actual and necessary administrative expenses ..."

The Fifth Circuit has not addressed this issue, and the Bankruptcy Court, in reviewing the divergent case law, applied the reasoning of the Second Circuit to the instant case. The Bankruptcy Court found that Ross's termination took place-post petition, and concluded that Ross's claim is entitled to administrative expense priority under § 507(a).

There are important policy reasons for permitting severance pay agreements to have administrative expense priority status, especially when such agreements are offered to employees of financially troubled companies as an incentive not to leave. Companies faced with financial problems and/or impending bankruptcy must have the authority to enter into enforceable severance agreements with key employees. If severance pay is denied priority status, this incentive will be lessened.

Campo attempted to assume the employment agreement shortly after filing for Chapter 11 protection, maintaining that the retention of key employees, such as Ross, under the employment contracts entered into pre-petition, but clearly in anticipation of impending bankruptcy, was important to the survival of Campo. The very act that triggered Ross's entitlement to severance pay, (the elimination of his position), was performed in an attempt to preserve the estate. The Bankruptcy Court's finding that Ross's severance pay

---

**1.** *See In re Roth Am., Inc.*, 975 F.2d 949, 957 (3d Cir.1992); *In re Health Maintenance Found.*, 680 F.2d 619, 621 (9th Cir.1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 952 (1st Cir.1976).

constitutes an actual and necessary expense of preserving the estate entitled to administrative expense status under 11 U.S.C. § 503(b)(1)(A) was not error.

## III. CONCLUSION

The findings of fact by the Bankruptcy Court are not clearly erroneous, and are therefore adopted by this Court. The Bankruptcy Court's determination that Ross is entitled to severance pay under the employment agreement and the severance pay is accorded priority as an administrative expense of the estate was not error. The decision of the Bankruptcy Court is **AFFIRMED.**