In re: David Wesley VICKERS, Debtor.

**Winifred R. Lang, Plaintiff,**

v.

**David Wesley Vickers, Defendant.**

**Bankruptcy No. 99–1307–3P7.
Adversary No. 99–148.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 4, 2000.

**532**

Nicholas V. Pulignano, Jr., Jacksonville, FL, for Plaintiff.

D.C. Higginbotham, Jacksonville, FL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This proceeding came before the Court upon a complaint filed by Winifred R. Lang ("Plaintiff") to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (B) and 523(a)(4). (Adv.Doc. 1.) David Wesley Vickers ("Defendant") filed an answer and affirmative defense. (Adv.Doc. 5.) On October 26, 1999 the Court held a trial on all issues and granted Defendant's Motion to Dismiss as to 11 U.S.C. § 523(a)(4). (Adv. Doc. 12.) The Court continued the trial until February 16, 2000. The Court requested written submissions in lieu of closing oral argument. (Adv.Doc. 17.) Upon review of the evidence presented and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. In September, 1997 Plaintiff contacted David W. Vickers General Contracting, Inc. ("Vickers Contracting"), of whom Defendant was the President and sole shareholder, to obtain an estimate for a home repair and remodeling project.

2. On September 25, 1997, Scott Cessna, field manager for Vickers Contracting, went to Plaintiff's home to inspect the property and to prepare an estimate. Plaintiff signed a proposal detailing the repairs and improvements to be made at a cost of $12,600. (Pl.'s Ex. 1.)

3. On October 23, 1997, at Plaintiff's request, Defendant met with Plaintiff concerning a new remodeling proposal. In addition to the work contained in the September 25, 1997 proposal, the October 23, 1997 proposal provided for the addition of a 14′ by 14′ room to the rear of the house. (Pl.'s Ex. 2.)

4. When Plaintiff signed the proposal, the contract price was left blank. (Pl.'s Ex. 3.)

5. Plaintiff testified that Defendant told her she would receive a free commercial stove, for which she was required to put down a $50 deposit, as an incentive for entering into the repair and remodeling agreement. At the direction of Defendant, Plaintiff issued a $50 check, payable to Defendant individually. (Pl.'s Ex. 4.) Defendant testified that he did not know what the check was for. (October 26, 1999 H'rg.)

6. On October 23, 1997 Defendant applied to Green Tree Financial Servicing Corporation ("Green Tree") for a $24,600 home improvement loan secured by a mortgage on Plaintiff's home. On November 10, 1997 Green Tree approved the loan application, subject to receipt of signed loan documents and the work contract. (Pl's Ex. 10.) Defendant did not show the loan approval to Plaintiff, and testified that it is not customary to do so. (October 26, 1999 H'rg.)

7. On November 11, 1997 Defendant went to Plaintiff's home and presented her with a mortgage and other loan documents to sign. Despite the requirement that a notary be present to witness the signing of the mortgage, only Plaintiff and Defendant were present when Plaintiff signed the mortgage. Defendant then submitted the loan documents to Green Tree. (Pl.'s Ex. 21.)

8. Plaintiff testified that Defendant told her the mortgage was a "loan application" and that she never received copies of the loan documents.

9. On January 14, 1998 Green Tree issued four checks totaling $24,600 made payable to Vickers Contracting *and* Plaintiff. The same day, Green Tree sent a package containing the four checks and a copy of the Home Improvement Retail Installment Contract and Security Agreement to Plaintiff's home by overnight express delivery.

10. Although Plaintiff was not present when the package arrived at her home on January 15, 1998, Defendant was. Defendant accepted the package from the carrier without Plaintiff's knowledge or consent. (October 26, 1999 H'rg.)

11. On that same day, Defendant deposited the four checks into Vicker's Contracting's corporate account. (Pl.'s Ex. 19.)

12. On January 16, 1998 Plaintiff wrote a letter to Defendant informing him that she was canceling the home improvement contract. (Pl.'s Ex. 13.) However, Defendant advised Plaintiff that she could not cancel the contract.

13. On January 16, 1998 Defendant filed a Notice of Commencement, signing as Agent for Owner, without Plaintiff's knowledge or consent. (Pl.'s Ex. 24.)

14. As of January 20, 1998 when Defendant's employees arrived at Plaintiff's home to begin work, Plaintiff still had not received copies of any of the loan documents. (Pl.'s Test. October 26, 1999 H'rg.) At Plaintiff's insistence, Defendant's employees left. *(Id.)*

15. On the evening of January 20, 1998 Defendant went to Plaintiff's home and asked her what he needed to do to complete the job. (October 26, 1999 H'rg.) Plaintiff agreed to allow Defendant's employees to resume the project.

16. On January 22, 1998 Defendant obtained a building permit from the Building and Zoning Inspection Division of Jacksonville, Florida. (Pl.'s Ex. 12.)

17. On January 23, 1998 the mortgage on Plaintiff's home and the Notice of Commencement were recorded in the Official Records of Duval County, Florida. (Pl.'s Exs. 21, 24.)

18. Subsequently, Defendant's employees returned to Plaintiff's home to resume the project. After Defendant's employees installed a concrete and wooden foundation for the room addition and began constructing a doghouse, Plaintiff again protested because she was dissatisfied with the quality of the construction. (October 26, 1999 H'rg.) Defendant's employees then abandoned the job. Defendant testified that Plaintiff told him he would be arrested if he came back on her property and that he does not know why she ordered his employees off the property. (Def.'s Test. February 16, 2000 H'rg.) Plaintiff testified that it would cost approximately $12,000 to restore her home to its original condition.

19. Subsequently, Plaintiff began receiving mortgage invoices from Green Tree of which she had no previous knowledge.

20. On October 22, 1998 Plaintiff filed a complaint against Defendant, Vickers Contracting, Vickers Funding, Inc. and Green Tree (collectively "state court defendants") in Duval County Florida Circuit Court, alleging common law fraud, breach of fiduciary duty, violation of the Federal Truth in Lending Act, violation of the Florida Unfair and Deceptive Trade Practices Act, Civil Theft and Gross Negligence. (Pl.'s Ex. 20.)

21. None of the state court defendants filed an answer to the complaint. On January 21, 1999 a Final Judgment after Default was entered against state court defendants in the amount of $42,398.50. (Pl.'s Ex. 22.)

22. On February 24, 1999 Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. (Doc. 1.)

23. On May 11, 1999 Plaintiff filed complaint to determine dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (B) and (a)(4). (Adv.Doc. 1.)

24. On September 2, 1999 the Duval County Florida Circuit Court entered Order Denying Motion to Set Aside Final Judgment as to Defendant. (Pl.'s Ex. 23.)

### CONCLUSIONS OF LAW

■ Plaintiff contends Defendant is collaterally estopped from disputing the factual elements of fraud conclusively established by entry of the state court default judgment. Alternatively, Plaintiff contends that even if issue preclusion does not apply, fraud was proven at trial in this Court. Defendant contends that because there is no way of knowing upon which grounds the judgment against Defendant was based, collateral estoppel cannot apply.[1] Defendant also argues that the evidence produced at trial does not support a finding of nondischargeability. The preliminary issue before the Court is whether the Final Judgment After Default entered in the state court conclusively establishes the elements of fraud as to Defendant and thus, prevents the discharge of the judgment debt.

### I. Collateral Estoppel

■ The Supreme Court has made clear that the principles of collateral estoppel may apply to foreclose the relitigation of facts in an exception to discharge proceeding. *See Grogan v. Garner*, 498 U.S. 279, 285 n. 1, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In considering whether to give preclusive effect to state court judgments, federal courts must apply that state's law of collateral estoppel. *See Vazquez v. Metropolitan Dade County*, 968 F.2d 1101, 1106 (11th Cir.1992). Under Florida law, three elements must be present in order for issue preclusion to be proper: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination must have been a critical and necessary part of the judgment in that earlier action. *See St. Laurent, II v. Ambrose (In re St. Laurent, II)*, 991 F.2d 672, 676 (11th Cir.1993) (interpreting Florida law of collateral estoppel); *Vazquez*, 968 F.2d at 1106 (noting standard for applying collateral estoppel under Florida law is identical to federal standard); *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of N. Am., Inc.*, 32 F.3d 528, 532 (11th Cir.1994) (same). Also, in order for a party to be estopped from relitigating an issue regarding the dischargeability of a debt, a bankruptcy court must find that the burden of persuasion in the discharge proceeding is not significantly heavier than the burden of persuasion in the initial proceeding. *See Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1322 (11th Cir.1995).

### A. Identical Issues

■ In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A)[2]

**1.** Under a similar rationale, Defendant argues that collateral estoppel cannot apply because the state court complaint was filed not only against Defendant individually, but against three other defendants. However, there is some question whether identity of parties is even necessary under Florida collateral estoppel law. *See* cases cited *infra* note 3. Nevertheless, because Defendant is named in his individual capacity in both proceedings, the Court finds the parties "identical" under similar reasoning as set forth in Part I.C. *See* discussion *infra* Part I.C. Moreover, because the Final Judgment After Default was entered against all defendants jointly and severally,

the Court finds the parties sufficiently "identical" for collateral estoppel purposes.

**2.** 11 U.S.C. § 523(a)(2)(A) provides in pertinent part that:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

Plaintiff must prove: (1) that Defendant made a false representation with the purpose and intent of deceiving Plaintiff; (2) that Plaintiff justifiably relied upon the representation; and (3) that Plaintiff sustained a loss as a result of the representation. *See City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 281 (11th Cir. 1995); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986). To prove fraud under Florida law, a plaintiff must establish that the defendant made a "deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff." *First Interstate Dev. Corp. v. Ablanedo,* 511 So.2d 536, 539 (Fla.1987). In the present case, Plaintiff alleged sufficient facts in the state court complaint to support a cause of action for common law fraud under Florida law. (*See* Pl.'s Ex. 20 at ¶¶ 23, 25–27.) The Eleventh Circuit has held that because the elements for common law fraud in Florida closely mirror the requirements of § 523(a)(2)(A), the claims are sufficiently identical to meet the first prong of the collateral estoppel test. *See In re St. Laurent, II,* 991 F.2d at 676 (internal quotations and citations omitted). Accordingly, because the facts alleged in the state court complaint match the elements of § 523(a)(2)(A), the first element of collateral estoppel is met. *See id.*

**B. Actually Litigated**

■ A pure default judgment, entered when there is no participation by the defendant, is sufficient to satisfy the "actually litigated" element of collateral estoppel under Florida law. *See Masciarelli v. Maco Supply Corp.,* 224 So.2d 329, 330 (Fla.1969); *Avant v. Hammond Jones,*

11 U.S.C. § 523(a)(2)(A) (West 2000).

**3.** Under Eleventh Circuit precedent and Florida case law, it is unclear whether or not "critical and necessary" is an element of Florida collateral estoppel law. *Compare St. Laurent, II,* 991 F.2d at 676, *Vazquez,* 968 F.2d at 1106, *and Mike Smith Pontiac,* 32 F.3d at 532, *with Community Bank of Homestead v. Torcise,* 162 F.3d 1084, 1086 (11th Cir.1998), *Trucking Employees of North Jersey Welfare*

*Inc.,* 79 So.2d 423, 424 (Fla.1955). Thus, the fact that Defendant did not participate at all in the state court action does not change the fact that the issue of fraud was "actually litigated" under Florida collateral estoppel principles. *See Masciarelli,* 224 So.2d at 330; *Avant,* 79 So.2d at 424; *see also Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.1995) (holding Florida law bars relitigation of issue decided by default judgment). *But cf. Bush,* 62 F.3d at 1323 (noting default judgment generally does not support application of collateral estoppel under federal law). Additionally, the fact that the state court denied Defendant's subsequent motion to set aside the default judgment only strengthens the Court's conclusion that the issue of fraud was "actually litigated".

**C. Critical and Necessary** [3]

The state court judgment fails to distinguish which of several independently adequate grounds are relied upon to support the default judgment. This would seem to make it impossible to determine with certainty what issues were in fact necessary and critical to the judgment. The proper standard to apply to a Florida default judgment entered on multiple, independent grounds is an issue of first impression in this Court. Likewise, the Eleventh Circuit Court of Appeals has not specifically addressed the issue. *See St. Laurent, II,* 991 F.2d at 677 n. 5 (noting because state court made independent finding of fraud, no need to determine what standard to apply to Florida judgment supported by multiple, independent grounds).

■ Nevertheless, the proper standard to apply to a Florida default judgment

*Fund, Inc. v. Romano,* 450 So.2d 843, 845 (Fla.1984), *Florida Dep't of Revenue v. Ferguson,* 673 So.2d 920, 922 (Fla.2d Dist.Ct.App. 1996), *and Dep't of Health and Rehabilitative Serv. v. B.J.M.,* 656 So.2d 906, 910 (Fla.1995). Nonetheless, it appears at minimum that the "critical and necessary" element is encompassed in the "actually litigated" component of Florida collateral estoppel law.

sustained by multiple, independent grounds is discernible from *dicta* found in *Perez v. Rodriguez*, 349 So.2d 826, 827 (Fla.3d Dist.Ct.App.1977). *See Lasky v. Itzler (In re Itzler)*, 247 B.R. 546 (Bankr. S.D.Fla.2000). In *Perez*, the court states "[t]he law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment." 349 So.2d at 827. *Perez* persuades the Court that every allegation in the state court complaint, including Plaintiff's common law fraud claim, was conclusively established as true by entry of the default judgment. *See Perez*, 349 So.2d at 827; *In re Itzler*, 247 B.R. at 548. Thus, the Court finds the elements of common law fraud to be critical and necessary to the state court default judgment.

### D. Burden of Persuasion

The final prong in the Court's analysis concerns the weight of the burdens of persuasion. The Supreme Court has concluded that "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan*, 498 U.S. at 281, 111 S.Ct. 654. The Eleventh Circuit has determined that the evidentiary burdens for fraud under Florida law and under § 523(a) are identical. *See St. Laurent, II*, 991 F.2d at 677. *See also Wieczoreck v. H & H Builders, Inc.*, 475 So.2d 227, 228 (Fla.1985) (finding "only a preponderance or greater weight of the evidence is required to establish fraud ..."). Accordingly, the Court finds the last prong satisfied.

Based on the foregoing, the Court finds that Florida collateral estoppel law prevents Defendant from relitigating the truth of the allegations of fraud. Accordingly, the Court finds the debt owed by Defendant to Plaintiff in the amount of $42,398.50 is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). While this finding would ordinarily end the Court's inquiry, the Court deems it appropriate to note that the evidence presented at trial independently establishes fraud and a finding of nondischargeability.

### II. Independent Evidence of Fraud; 11 U.S.C. § 523(a)(2)(A) [4]

At trial, the evidence clearly established that Defendant made numerous deliberate and knowing misrepresentations to Plaintiff that were designed to cause, and actually did cause detrimental reliance by Plaintiff. Initially, Defendant and Defendant's employee induced Plaintiff to sign the home-remodeling contract based on false representations that she would receive a free stove with only a $50 deposit. Subsequently, Defendant presented Plaintiff with a Mortgage and Home Improvement Retail Installment Contract and Security Agreement, and represented to her that the documents were "loan applications". Defendant induced Plaintiff to sign the mortgage in blank, and then had the mortgage notarized outside Plaintiff's presence. Thereafter, Defendant submitted the fraudulent mortgage to Green Tree, knowing that it was not properly witnessed or notarized.

The evidence also shows that Defendant intercepted and stole an overnight delivery package addressed to Plaintiff, which included construction draw checks payable to Plaintiff and Defendant. The same day, without Plaintiff's knowledge, Defendant deposited the four checks into Vicker's

---

4. Because the Court concludes that the requirements for nondischargeability under § 523(a)(2)(A) are satisfied, it will not address § 523(a)(2)(B). *See supra* note 2; Part 1.A–D for discussion of a finding of nondischargeability based on collateral estoppel. *See also infra* Part II for discussion of an independent finding of fraud and nondischargeability pursuant § 523(a)(2)(A).

Contracting's corporate account. After Defendant intercepted the Green Tree construction draw checks, Defendant falsely represented to Plaintiff that the remodeling project could not be canceled, even though no work had been done. Defendant then began construction on Plaintiff's home, which subsequently resulted in approximately $12,000 worth of damage and restoration repairs.

Based on the preceding, Plaintiff has established by a preponderance of the evidence that: (1) Defendant made false representations with the purpose and intention of deceiving Plaintiff; (2) Plaintiff justifiably relied on the representations; and (3) Plaintiff sustained a loss in the amount of $12,050 [5] as a result of the misrepresentations. *See Vann,* 67 F.3d at 281; *Grogan,* 498 U.S. at 285, 111 S.Ct. 654. However, because Plaintiff successfully cancelled the mortgage and debt to Green Tree, the Court finds that Plaintiff has failed to prove additional damages of $24,600. Moreover, allowing such damages would result in a windfall to Plaintiff and thus, this amount will not be allowed. Accordingly, in the event collateral estoppel does not properly apply, Plaintiff has independently established a nondischargeble debt owed to her by Defendant [6] in the amount of $12,050 pursuant to § 523(a)(2)(A).

### CONCLUSION

Based on the foregoing, the Court finds that Florida collateral estoppel law prevents Defendant from relitigating the truth of the allegations of fraud. Applying collateral estoppel to the state court default judgment leads inescapably to the conclusion that the debt owed by Defendant to Plaintiff in the amount of $42,398.50 is nondischargeble pursuant to 11 U.S.C. § 523(a)(2)(A). A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

5. The total damages of $12,050 is calculated by adding the $50 stove deposit with the damages and cost to repair Plaintiff's home in the amount of $12,000.

6. Defendant asserts that Plaintiff's agreement was with David W. Vickers, Inc., not with Defendant individually and therefore, Defendant cannot be held liable for the corporation's wrongdoing. However, there is substantial evidence that Defendant committed the fraud in his individual capacity. Moreover, Plaintiff introduced ample evidence of Defendant's control over the corporation and wrongdoing associated with the transaction to support a finding of personal liability on his part. *See P.V. Constr. Corp. v. Kovner,* 538

So.2d 502, 504 (Fla. 4th Dist.Ct.App.1989) (holding corporate officer liable for tort committed even when not done in furtherance of corporation); *Orlovsky v. Solid Surf, Inc.,* 405 So.2d 1363, 1364 (Fla. 4th Dist.Ct.App.1981) (noting corporate officer may be liable for tortious acts even when committed within scope of employment); *Champion Home Builders Co. v. Tarrant (In re Tarrant),* 84 B.R. 831, 833 (Bankr.M.D.Fla.1988) (holding officer selling "out of trust" is personally liable if responsible for day-to-day operations of corporation); *In re Hyers,* 70 B.R. 764, 766 (Bankr.M.D.Fla.1987) (holding officer individually liable for conversion without need to pierce corporate veil).