In re Adam Alexander GREEN, Debtor.

Dimmitt & Owens Financial,
Inc., Plaintiff,

v.

Adam Alexander Green, Defendant.

Bankruptcy No. 96–16282–8G7.
Adversary No. 97–197.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 19, 2001.

Donald A. Workman, Tampa, FL, for Plaintiff.

Buddy D. Ford, Tampa, FL, for Defendant.

## ORDER ON MOTION FOR RECONSIDERATION OR AMENDMENT OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION, AND CORRESPONDING FINAL JUDGMENT ENTERED SEPTEMBER 11, 2000

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Reconsideration or Amendment of Findings of Fact, Conclusions of Law and Memorandum Opinion, and Corresponding Final Judgment Entered September 11, 2000, filed by the Plaintiff, Dimmitt & Owens Financial, Inc.

The Plaintiff commenced this adversary proceeding by filing a Complaint to Determine Nondischargeability of Debt. On September 11, 2000, the Court entered its Findings of Fact, Conclusions of Law and Memorandum Opinion, and found that the debt owed by the Debtor to the Plaintiff was not excepted from discharge pursuant to §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), or 523(a)(6) of the Bankruptcy Code. The Plaintiff has requested that the Court reconsider its determination that the debt is dischargeable. The Plaintiff primarily contends that the Court should have found that the Debtor is collaterally estopped from litigating the issue of dischargeability based upon a default Final Judgment previously entered by the Circuit Court of Pinellas County, Florida.

### Background

The crux of the Plaintiff's argument appears at page 6 of its Motion for Reconsideration.

> Applying Florida law, this Court must conclude, see Itzler, 247 B.R. at 550, that Green's indebtedness to Dimmitt &

Owens is nondischargeable under 11 U.S.C. § 523(a)(2)(A), because of the doctrine of collateral estoppel. On April 17, 1996, Dimmitt & Owens sued LPS and Green in Florida state court in a five count complaint (the "Florida State Court Complaint"). (Exhibit 5.) In Count IV of the Florida State Court Complaint, Dimmitt & Owens alleged that Green fraudulently induced Dimmitt & Owens to purchase accounts receivables.

(Plaintiff's Motion for Reconsideration or Amendment of Findings of Fact, Conclusions of Law and Memorandum Opinion, and Corresponding Final Judgment, Entered September 11, 2000, p. 6).

Count IV of the Complaint filed by the Plaintiff in the Circuit Court of Pinellas County, Florida includes the following allegations:

### Count IV

### (Fraudulent Misrepresentation)

. . .

43. On or about September 27, 1995, LPS and Green represented to Dimmitt & Owens that certain accounts receivables of customers of LPS existed and were collectable.

44. Such representation is now, and was when made, false, and both LPS and Green knew that such representation was false at the time the representation was made.

45. LPS and Green made such representation to Dimmitt & Owens intending that Dimmitt & Owens should purchase the accounts receivables from LPS.

46. Dimmitt & Owens was not aware of the falsity of the representation by LPS and Green, and reasonably believed the representation to be true.

47. Furthermore, on or about September 27, 1995, LPS and Green represented to Dimmitt & Owens that both LPS and Green had sufficient assets to satisfy the terms of the Promissory Note and the Guaranty Agreement.

48. Such representations are now, and were when made, false, and both LPS and Green knew that those representations were false at the time that they were made.

49. LPS and Green made such representations to Dimmitt & Owens intending that Dimmitt & Owens should forebear instituting a lawsuit by entering into the Settlement Agreement, Promissory Note and Guaranty Agreement.

50. In reliance on such representations, Dimmitt & Owens entered into the Settlement Agreement, Promissory Note and Guaranty Agreement.

51. In so acting, Dimmitt & Owens was not aware of the falsity of the representations of LPS and Green, and reasonably believed the representations to be true.

(Joint Exhibit 5, State Court Complaint, pp. 8–9).

It is undisputed that the Debtor did not answer the Plaintiff's Complaint or file a responsive motion. (Transcript, Final Evidentiary Hearing, p. 171)("We will stipulate that this is a complaint that was served, he never filed an answer, there was a default entered."). It also is undisputed that a Final Judgment was entered against the Debtor in the State Court action on October 23, 1996. (Joint Exhibit 12, Final Judgment).

The Debtor filed a petition under chapter 7 of the Bankruptcy Code on November 25, 1996, and the Plaintiff timely filed its Complaint against the Debtor to Determine Nondischargeability of Debt.

## Discussion

The Plaintiff previously filed a Motion for Summary Judgment in this adversary proceeding as to Counts I and II of the Complaint to Determine Nondischargeability of Debt. In its Motion for Summary Judgment, the Plaintiff asserted that the Debtor was "collaterally estopped from contesting that the indebtedness is based on fraudulent conduct." Specifically, the Plaintiff contended that all of the required elements to establish collateral estoppel were present in this case because (1) the issue in the bankruptcy case is identical to the issue in the prior state court proceeding; (2) the issue was actually litigated in the prior state court proceeding; and (3) the determination of the issue was a critical and necessary part of the judgment in the earlier decision. (Plaintiff's Motion for Summary Judgment, pp. 5–8).

On February 19, 1999, the Court entered an Order denying Plaintiff's Motion for Summary Judgment as to Counts I and II of the Complaint. In that Order, the Court applied the elements of collateral estoppel as set forth by the Eleventh Circuit Court of Appeals in *In re St. Laurent*, 991 F.2d 672 (11th Cir.1993).

> Under Florida law, the following elements must be established before collateral estoppel may be invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*In re St. Laurent*, 991 F.2d at 676. In applying these guidelines, the Court readily found that the second and fourth ele-

ments were satisfied. That is, the Court recognized that, under Florida law, an issue is regarded as "actually litigated," even where the prior proceeding was resolved by a default judgment. The Court also recognized that the standard of proof in the state court action was at least as stringent as the standard in the dischargeability action.

The Court could not determine from the record, however, that the first and third elements set forth in *St. Laurent* were satisfied. As explained in the Order, the State Court Complaint contained five counts. In addition to the count based on fraudulent misrepresentation (Count IV), the Complaint also included a claim based on breach of a settlement agreement (Count I), an action on a Note (Count II), an action on a Guaranty (Count III), and a claim for replevin (Count V).

The Final Judgment entered in the State Court action, however, provides in its entirety:

> This action was heard after entry of Default against Defendants and
>
> IT IS ADJUDGED that Plaintiff, Dimmitt & Owens Financial, Inc., recover from Defendants, jointly and severally, LPS Limited, Inc., and Adam Green, the sum of Ninety Six Thousand One Hundred Eighty One Dollars and Forty Seven Cents ($96,181.47) on principal, $2,558.50 for attorneys' fees with costs in the sum of $530.30, making a subtotal of $99,270.27 that shall bear interest at the rate of 10 % a year and in addition the Plaintiff shall recover pre-judgment interest on the contractual rate of 9% for which let execution issue.

(Joint Exhibit 12, Final Judgment).

After considering the multiple counts in the State Court Complaint, together with the conclusory nature of the Final Judg-

ment, this Court denied the Plaintiff's Motion for Summary Judgment:

> As noted above, the state court complaint contains counts based on the Settlement Agreement, the note, the Guaranty Agreement, and for replevin, as well as a count for fraudulent misrepresentation. The default judgment rendered by the state court as a result of the complaint does not recite a basis for the judgment. The basis for the judgment could be any of the counts of the complaint, and does not necessarily presuppose fraud on the part of the Defendant. It cannot be determined from the record that the first and third tests of *St. Laurent* are met.

(Order on Plaintiff's Motion for Summary Judgment as to Counts I & II of the Complaint, pp. 5–6).

The Court therefore denied the Plaintiff's Motion for Summary Judgment, and a trial was conducted on the merits of the dischargeability action. Following the conclusion of the evidence, the Court entered its Findings of Fact, Conclusions of Law and Memorandum Opinion on September 11, 2000. In the Motion currently under consideration, the Plaintiff requests that the Court reconsider the Memorandum Opinion and the Final Judgment entered in accordance therewith.

### A. *Itzler*

To support its Motion for Reconsideration, the Plaintiff relies primarily on the decisions reached in *In re Vickers*, 247 B.R. 530 (Bankr.M.D.Fla.2000) and *In re Itzler*, 247 B.R. 546 (Bankr.S.D.Fla.2000). Both of these opinions were rendered subsequent to this Court's entry of its Order denying the Plaintiff's Motion for Summary Judgment. After considering the analysis and reasoning set forth in the decisions, however, the Court determines that it should not reconsider its Memorandum Opinion or Final Judgment entered on September 11, 2000.

First, in *In re Itzler*, 247 B.R. 546 (Bankr.S.D.Fla.2000), the Court found that only one issue was presented in the case:

> Plaintiff's Motion for Summary Judgment presents one narrow and important issue: Is a pure default judgment sufficient to meet the "fully litigated" element for applying collateral estoppel under Florida law?
>
> . . .
>
> The primary issue in this proceeding is whether the third[1] element of collateral estoppel is met: does the default judgment entered against Itzler in state court constitute a matter that has been "fully litigated" under Florida law.

*In re Itzler*, 247 B.R. at 547, 550. The Court concluded that the debtor in *Itzler* was precluded from relitigating the allegations of fraud in the dischargeability action.

> Thus a pure default satisfies the "fully litigated" element of collateral estoppel under Florida law. The fact that Itzler did not participate at all in the state court action does not change the fact that the issue of fraud was "fully litigated" under Florida collateral estoppel principles.

*Id.* at 554.

■ As indicated above, this Court has recognized that default judgments may meet the "actually litigated" test for the

---

1. The *Itzler* court considered that under Florida law the following elements of collateral estoppel must be met: (1) the parties are identical; (2) the issues are identical; and (3) the matter has been fully litigated. The court cited Florida Supreme Court authority for these elements.

application of collateral estoppel as required by *St. Laurent.*

The court, in the case of *In re Seifert,* 130 B.R. 607 (Bankr.M.D.Fla.1991), held that under Florida law, a default judgment satisfied the test that the issue must have been "actually litigated" in the prior proceeding because the defendant/debtors had the full opportunity to defend themselves and voluntarily chose not to participate in the state court case. See, also, *In re Greene,* 150 B.R. 282, 287 (Bankr.S.D.Fla.1993), citing *Cabinet Craft, Inc. v. A.G. Spanos–Enterprises, Inc.,* 348 So.2d 920 (Fla. 2nd DCA 1977). (Order on Plaintiff's Motion for Summary Judgment as to Counts I & II of the Complaint, p. 4).

Consequently, it appears that the principle for which *Itzler* stands is not inconsistent with this Court's conclusions regarding the effect of a default judgment for purposes of applying the doctrine of collateral estoppel. Both courts have held that a default judgment may satisfy the "actually litigated" element of the doctrine.

### B. "Critical and necessary"

According to the Eleventh Circuit Court of Appeals, however, the third element that must be shown to apply the doctrine of collateral estoppel is that "the prior determination of the first issue must have been *a critical and necessary part* of the judgment in that earlier decision." *In re St. Laurent,* 991 F.2d at 676(Emphasis supplied). It is this third element that was addressed by the Bankruptcy Court in *In re Vickers,* 247 B.R. 530 (Bankr. M.D.Fla.2000), and which constitutes the heart of the issue in this case.

In dischargeability proceedings, the "critical and necessary" issue may arise where the prior litigation involved a complaint containing multiple counts, where less than all of the counts alleged fraud, and where the judgment entered in the prior action does not specify the basis for its monetary award.

### 1. Vickers

In *Vickers,* for example, the state court plaintiff had filed a multi-count complaint alleging common law fraud, breach of fiduciary duty, violation of the Federal Truth in Lending Act, violation of the Florida Unfair and Deceptive Trade Practices Act, Civil Theft, and Gross Negligence. The debtor did not answer the complaint, and a Final Judgment after Default was entered against the debtor. *In re Vickers,* 247 B.R. at 533. In a subsequent dischargeability action, the debtor contended that collateral estoppel should not apply "because there is no way of knowing upon which grounds the judgment against Defendant was based." *Id.* at 534. According to the Bankruptcy Court, the issue was "whether the Final Judgment After Default entered in the state court conclusively establishes the elements of fraud as to Defendant and thus, prevents the discharge of the judgment debt." *Id.*

The Court looked to *St. Laurent* to determine the elements of collateral estoppel under Florida law. *Id.* The third element set out in *St. Laurent* is that the decision must have been a critical and necessary part of the judgment in the earlier action. With respect to this element, the Court stated:

> The state court judgment fails to distinguish which of several independently adequate grounds are relied upon to support the default judgment. This would seem to make it impossible to determine with certainty what issues were in fact necessary and critical to the judgment. The proper standard to apply to a Florida default judgment entered on multiple, independent grounds is an issue of first impression in this

Court. Likewise, the Eleventh Circuit Court of Appeals has not specifically addressed the issue. See *St. Laurent, II*, 991 F.2d at 677, n. 5 (noting because state court made independent finding of fraud, no need to determine what standard to apply to Florida judgment supported by multiple, independent grounds).

Nevertheless, the proper standard to apply to a Florida default judgment sustained by multiple, independent grounds is discernible from dicta found in *Perez v. Rodriguez*, 349 So.2d 826, 827 (Fla.3d Dist.Ct.App.1977). See *Lasky v. Itzler (In re Itzler)*, 247 B.R. 546 (Bankr. S.D.Fla.2000). In *Perez*, the court states "[t]he law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment." 349 So.2d at 827. *Perez* persuades the Court that every allegation in the state court complaint, including Plaintiff's common law fraud claim, was conclusively established as true by entry of the default judgment. See *Perez*, 349 So.2d at 827; *In re Itzler*, 247 B.R. at 548. Thus, the Court finds the elements of common law fraud to be critical and necessary to the state court default judgment.

*In re Vickers*, 247 B.R. at 535–36. On this basis, the Court concluded that Florida law regarding collateral estoppel prevented the debtor from relitigating the allegations of fraud in a subsequent dischargeability action. *Id.* at 536.

The *Vickers* decision was not a decision on a motion for summary judgment, however. A full trial was held on the dischargeability complaint, and the Court entered findings of fact and conclusions of law. After concluding that collateral estoppel applied to establish fraud and render the debt nondischargeable, the Court also specifically concluded that "the evidence presented at trial independently establishes fraud and a finding of nondischargeability." *Id.* at 536. The Court wrote a section of its opinion on "Independent Evidence of Fraud." *Id.* at 536–37.

In this case, as in *Vickers*, the complaint filed in state court contained both fraud and non-fraud counts, and the state court did not designate which of the counts it relied on when it entered the default judgment. The Bankruptcy Court in *Vickers* concluded that collateral estoppel applied to the default judgment because, under Florida law, the judgment conclusively established all material allegations contained in the complaint.

Even if all of the allegations in a complaint are deemed established, however, this Court cannot conclude that allegations regarding fraud are a "critical and necessary" part of a simple default judgment in those cases in which both fraud counts and non-fraud counts were asserted in the state court complaint and there is no way to distinguish which count is the basis for the judgment.

## 2. The "critical and necessary" requirement

In *Vickers*, the Court indicated that it is unclear whether the "critical and necessary" element is required under Florida collateral estoppel law. *In re Vickers*, 247 B.R. at 535 n. 3. The Court addressed the issue, however, because "it appears at minimum that the 'critical and necessary' element is encompassed in the 'actually litigated' component of Florida collateral estoppel law." *Id.*

█ This Court agrees that the "critical and necessary" element is an element that is appropriate to evaluate when applying the Florida law of collateral estoppel, whether the element is listed separately or encompassed in the "fully litigated" component. Recent decisions under Florida law demonstrate that the "critical and necessary" showing remains an operating element of collateral estoppel. See *Holt v. Brown's Repair Service, Inc.*, 780 So.2d 180, at 182 (Fla.App. 2 Dist. 2001) and *Acadia Partners, L.P. v. Tompkins*, 759 So.2d 732, 738 (Fla. 5th DCA 2000). See also *All Pro Sports Camp, Inc. v. Walt Disney Company*, 727 So.2d 363, 366 (Fla. 5th DCA 1999) and *Porter v. Saddlebrook Resorts, Inc.*, 679 So.2d 1212, 1214–15 (Fla. 2d DCA 1996).

█ Even *Perez v. Rodriguez*, 349 So.2d 826 (Fla. 3d DCA 1977) indicates that a default judgment establishes only those facts that were necessary to uphold the judgment.

> The law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action *and every fact necessary to uphold the default judgment,* but such judgment is not conclusive at to any defense or issue which was not raised *and is not necessary to uphold the default judgment* ....

> The default judgment is not conclusive on the breach of contract actions presently brought since these actions raise issues which were not involved in the prior actions *and which are not neces-*

*sary to uphold the prior default judgment* ....

*Perez v. Rodriguez*, 349 So.2d 826, 827 (Fla. 3d DCA 1977)(Emphasis supplied).

█ Only minimal case authority has developed regarding the application of the "critical and necessary" element of Florida collateral estoppel law. Some courts have spoken in terms of whether a particular issue was "essential" to the prior court's ultimate determination. If the issue was not "essential" to the court's final action, it should not be used for purposes of collateral estoppel. *Porter v. Saddlebrook Resorts, Inc.*, 679 So.2d at 1215. See also *State ex rel. Pettengill v. Copelan*, 466 So.2d 1133, 1135 (Fla. 1st DCA 1985)(a factual determination regarding certain property rights was not essential to the ultimate resolution of the prior action).

█ It appears that the "critical and necessary" test is most often used in Florida to distinguish facts essential to a judgment where only one cause of action has been litigated. For example, in a breach of contract action that also contains allegations of fraud, only the allegations establishing the breach of contract would be essential to the judgment.[2] However, where, as here, breach of contract and fraud are separately alleged in different actions within the same complaint, and the judgment relates to the complaint without any indication of its basis, the question of whether either or both of the actions were essential to the judgment arises. The Court has not found Florida law directly on this issue, but looks to Florida decisions that may be helpful in the analysis. In *Baum v. Pines Realty, Inc.*, 164 So.2d 517, 520 (Fla. 2d DCA 1964), the court stated:

---

2. In *Perez v. Rodriguez*, 349 So.2d 826 (Fla. 3d DCA 1977), the Court concluded that a default judgment in an action on two promissory notes was not res judicata as to breach of contract actions notwithstanding that the notes arose out of obligations contained in the contracts.

And in determining what was directly decided by a money judgment by default, as well as by any other kind of judgment, the adjudicating part of which is not entirely clear on its face, it is necessary to resort to the plaintiff's pleadings *to ascertain those matters without the allegations of which it would not have been possible for plaintiff to obtain judgment by default. Only these matters and no others* should be regarded as res judicata. *Baum v. Pines Realty, Inc.,* 164 So.2d 517, 520 (Fla. 2d DCA 1964)(Emphasis supplied). When a general jury verdict makes it impossible to determine a jury's reason for its conclusions, Florida courts will not apply collateral estoppel to preclude litigation of issues that might have been decided. See *Sun State Roofing Co., Inc. v. Cotton States Mutual Insurance Co.,* 400 So.2d 842 (Fla. 2d DCA 1981). Collateral estoppel does not apply if the verdict could be grounded upon an issue other than that which is sought to be foreclosed from consideration. *Davis v. State,* 645 So.2d 66 (Fla. 4th DCA 1994) citing *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

█ Although the federal law of collateral estoppel is not applicable in determining the collateral estoppel effect of the state court judgment, the Court has reviewed the manner that the issue would be considered under federal law. *Moore's Federal Practice Third Edition* analyzes federal law on this issue. "There has been much controversy over whether alternative, independently sufficient grounds are necessary to a judgment so that issue pre-

clusion may be applied. Some circuits hold that each alternative ground is deemed necessary ..., while others hold that neither ground is necessary .... In addition, other courts have held that an alternative ground may not be given offensive issue preclusive effect ...." 18 *Moore's Federal Practice,* § 132.03[4][b][i] (Matthew Bender 3d ed.)(Footnotes omitted). *Moore's* indicates that the general rule is that alternative grounds are each regarded as necessary; however, *Moore's* states that the Eleventh Circuit does not apply this rule with respect to offensive issue preclusion, citing *Deweese v. Town of Palm Beach,* 688 F.2d 731, 734 (11th Cir. 1982).[3] Of course, in the case before the Court, the Plaintiff seeks to apply offensive issue preclusion. *Moore's* also describes the position taken by the Restatement (Second) of Judgments, which is that a judgment based on determinations of two issues, either of which standing independently would be sufficient to support the result, is not conclusive with respect to either issue standing alone. 18 *Moore's Federal Practice,* § 132.03[4][b][iv]. Finally, *Moore's* notes: "The 'modern rule' is: 'If a judgment rests on independent grounds, either of which would support the result, the judgment is not conclusive with respect to either issue standing alone.'" *Id.*

█ From these sources, it appears that the Florida and the federal courts are cautious in the application of collateral estoppel, and favor the preservation of rights and the substantive determination of issues in circumstances where it cannot be

---

**3.** "The final order of the state trial court contained a number of alternative bases for invalidating the original ordinance. Normally, each alternative basis would form an independent ground for collateral estoppel. [Citations omitted.] In this case, however, the existence of alternative grounds makes the application of offensive collateral estoppel problematic. Since the town agreed that the original ordinance was fatally vague and overbroad, it did not have an 'incentive to defend vigorously' ...." *Deweese v. Town of Palm Beach,* 688 F.2d 731, 734 (11th Cir. 1982).

ascertained which issues were essential to a judgment in a previous proceeding.

Accordingly, where the complaint in the prior proceeding contains multiple causes of action, but the final judgment awards only a single monetary amount without designating the cause of action to which the award relates or specifying a basis for the award, it cannot be known whether any particular cause of action was "essential" to the final judgment. No court subsequently reviewing the judgment can know which of the allegations were essential to the judgment, and the later court cannot know which of the allegations were "critical and necessary" to the final judgment.

### 3. Pre-*Vickers* decisions

The *Vickers* Court recognized the difficulty inherent in applying the "critical and necessary" element of collateral estoppel in its pre-*Vickers* decisions. In *In re McClain*, 138 B.R. 294 (Bankr.M.D.Fla. 1992), for example, a state court previously had entered a default judgment against the debtor on two counts of a complaint: a count for rescission of a contract based on fraudulent inducement, and a count for breach of contract and fraudulent inducement. In a subsequent dischargeability proceeding, the Court stated:

> The state court judgment contains no findings and merely recites the sum to be recovered for each count. The basis for each award is not clear and there is no indication as to whether the awards are duplicative or whether each amount is independent.
>
> Given the absence of any factual findings by the state court, this Court cannot conclude that the fraud issue in the state proceeding was a critical and necessary part of the judgment. Consequently, the third element has not been satisfied and the collateral estoppel doc-

trine cannot be applied to the case at bar.

*In re McClain,* 138 B.R. at 297. The Court had earlier expressed similar concerns with respect to a Maryland judgment.

> The Maryland action contained eight counts, each distinct and involving its own set of elements, burdens of proof, and measure of damages. Indeed, the Maryland jury could have been awarding compensatory damages under any, or all, of the counts in the complaint. No evidence was presented so as to make the conversion count a "critical and necessary part of the judgment."

*In re Reynolds,* 122 B.R. 455, 458 (Bankr. M.D.Fla.1990).

### 4. Application of "critical and necessary" requirement

 To apply the doctrine of collateral estoppel under Florida law, it must be shown that an issue was a "critical and necessary" part of the judgment entered in the prior proceeding. Although this "critical and necessary" element has not been well-defined, it appears to mean that the factual finding was essential to the ultimate decision in the prior case, and that the judgment could not have been entered without it. Where the prior final judgment made only a single monetary award with respect to a multi-count complaint, and it cannot be determined which of the allegations were essential to the judgment, the doctrine of collateral estoppel should not be applied because it cannot be shown that any particular allegations in the complaint were "critical and necessary" to the judgment.

### C. Other cases

### 1. *In re Nourbakhsh*

 Further, Florida courts are reluctant to invoke the doctrine of collateral

estoppel in actions seeking damages for fraud, unless the court in the prior proceeding clearly set forth its findings with respect to the fraudulent conduct. *Regal Marble, Inc. v. Drexel Investments, Inc.* 515 So.2d 1015, 1016 (Fla. 4th DCA 1987)("[T]he trial court's order granting Regal Marble's motion for relief from judgment does not contain a sufficiently clear finding of fraud to apply the doctrine of res judicata or collateral estoppel to this action.") Where a judgment has been entered on a multi-count complaint that contains both fraud and non-fraud counts, therefore, special consideration is appropriate before precluding further litigation with respect to the allegations of fraud.

The unique considerations surrounding allegations of fraud are especially significant in the context of dischargeability proceedings in bankruptcy cases. These considerations are discussed in *In re Nourbakhsh,* 162 B.R. 841 (9th Cir. BAP 1994), a decision arising in the Ninth Circuit, but decided according to Florida law. In *Nourbakhsh,* the plaintiff filed a complaint against the debtor for fraud, civil theft, breach of contract, usury, and violations of Florida RICO statutes. The debtor appeared in the case, filed a motion to dismiss and participated in some discovery, but did not file a written answer to the complaint. Following a hearing, the Florida state court entered a judgment after default, which included a specific finding, among other findings, that the debtor had "engaged in a scheme to defraud with systematic solicitations and false representations." *In re Nourbakhsh,* 162 B.R. at 846.

The debtor subsequently filed a chapter 7 petition in California, and the plaintiff filed a dischargeability action against the debtor pursuant to § 523(a)(2)(A) of the Bankruptcy Code. According to the Ninth Circuit Bankruptcy Appellate Panel, the issue was whether the debtor was "collaterally estopped from litigating the issue of fraud pursuant to 11 U.S.C. § 523(a)(2)(A) after the Florida State Court issued a default judgment against him for failing to answer a complaint alleging state law fraud." *Id.* at 843.

The Bankruptcy Appellate Panel determined that the state court default judgment was entitled to collateral estoppel effect, and that the debtor therefore was precluded from relitigating the issue of fraud. In reaching this decision, however, the Court was concerned that the elements of fraud were adequately established. *Id.* at 846("Having concluded that Florida law does not preclude a court from applying collateral estoppel to the state court default judgment, we look to the process leading to the entry of the default judgment to insure that the elements of fraud were adequately established."). The Court noted that the state court held a "prove-up hearing" prior to entering the default judgment, and that the state court entered findings of fact in the judgment after default that stated that the debtor "engaged in a scheme to defraud, . . . [engaged in] a pattern of criminal activity, . . . [engaged in] a pattern of racketeering activity . . . , and exacted illegal, unbargained for fabricated charges." *Id.* at 846. The Court determined that "a Florida State Court would give preclusive effect to a state court default judgement *based on fraud* and no federal exception to § 1738 applies." *Id.* at 846 (Emphasis supplied). The decision in *Nourbakhsh* is consistent with this Court's determination in the case at bar, since the state court order at issue in *Nourbakhsh* specifically included a finding of fraud, and the *Nourbakhsh* court determined that the elements of fraud had been adequately established.

Even though the circumstances in *Nourbakhsh* justify application of collateral es-

toppel because of the express finding of fraud in the state court order, Bankruptcy Judge Russell issued a dissenting opinion in that case which questioned whether default judgments should ever be afforded collateral estoppel effect in dischargeability proceedings. Generally, Judge Russell focused on the special nature of dischargeability actions and the preference indicated by the United States Supreme Court that such proceedings be decided by bankruptcy courts. *Id.* at 847–52. In his dissent, Judge Russell concluded:

> [A]n individual debtor, who lacks the funds to defend a suit in a remote forum may be compelled to default. Where there is a complete default, as is the case here, a debtor should not be bound by one-sided, unchallenged allegations which would summarily deny him the discharge of the debt. It furthers no congressionally intended purpose to find a debt nondischargeable based on a default judgment issued in a remote forum, all in the name of "full faith and credit." To advance the congressional policy behind § 523 in securing a debtor's chance at obtaining a discharge of debts, an exception to 28 U.S.C. § 1738 is warranted. A default judgment in and of itself is an insufficient basis for determining a debt to be nondischargeable.

*Id.* at 853. According to Judge Russell, the special federal interests involved in dischargeability proceedings warrant their disposition by federal courts, and such special interests should not depend on prior determinations by state courts. *Id.* at 851.

The concerns expressed by Judge Russell are illustrated by the facts surrounding the entry of the default judgment in the case at bar. In this case, the Debtor candidly acknowledged owing the debt, described the efforts he had made over time to pay the debt, and readily stipulated that the state court complaint was served on him and that he did not answer it. The Debtor testified, however, that he did not contest the state court action because he did not have the ability to hire an attorney to represent him. (Transcript, Final Evidentiary Hearing, p. 164, 165)("I could not afford an attorney to argue this lawsuit for me. . . . not having money, I guess, is not an issue because I didn't have any. Therefore, I couldn't defend myself. What was I going to do?")

The default judgment was entered by the state court in this case because of the Debtor's inability to challenge the allegations. According to Judge Russell, therefore, the judgment forms an insufficient basis upon which to find that the debt is nondischargeable in a bankruptcy case. Additionally, unlike the state court judgment in *Nourbakhsh*, the judgment in this case does not contain any findings of fact regarding the Debtor's alleged fraud.

### 2. *In re Rubin*

In April, 2000, a Bankruptcy Court in the Southern District of Florida decided *In re Rubin*, 2000 WL 387657 (Bankr. S.D.Fla.). In that case, two judgments had been entered against the debtor by Florida state courts. The judgments, for $15,000 and for $450,000, were default judgments in lawsuits with multi-count complaints, and were entered because the debtor did not file an answer to either complaint. The debtor asserted that his failure to answer the complaints and the subsequent default judgments resulted from several extraordinary circumstances: he had retained an attorney; the attorney assured him that the complaints had been responded to and would be appropriately defended; the attorney failed to defend either suit; the attorney had been disciplined by the Supreme Court of Florida and placed on an inactive list of attorneys; and the debtor did not learn of the default

judgments until months after they were entered.

In an adversary proceeding to except the judgment debts from the debtor's discharge, the creditor requested summary judgment on the basis of collateral estoppel. Opposing summary judgment, the Debtor, appearing without an attorney, contended that the state court cases were not actually litigated.

Before the court considered whether the case had been "actually litigated," the court stated:

> Initially, the Court notes that because it has been furnished with such a small portion of the prior state court records, *it is questionable whether the limited record shows that the alleged fraud, breach of fiduciary duty and conversion issues raised in the prior litigation were critical and necessary parts of the state court judgments.* The default judgments do not contain any factual findings or legal conclusions. Only money judgments were awarded to the Plaintiff. *Hence, it is not shown that the third[4] required element for application of the doctrine of collateral estoppel has been appropriately demonstrated.*

*In re Rubin,* 2000 WL 387657, at *3 (Emphasis supplied). The court did not decide the motion on this basis, however, since "[t]he only focus of the motion, however, is on the 'actually litigated' element." *Id.*

The Court noted that the Eleventh Circuit in *In re Bush,* 62 F.3d 1319 (11th Cir.1995), "made it clear that the application of the doctrine of collateral estoppel, even in the matter of a prior state court default, is discretionary with the trial court." *Rubin,* 2000 WL 387657 at *4. Deciding not to apply the doctrine of collateral estoppel, the Court in *Rubin* concluded that "it is the better exercise of its discretion to deny application of the doctrine of collateral estoppel based on the sparse record adduced by the Plaintiff and in light of the Defendant's unusual situation." *Id.* at *5.

██ As indicated by the Court's remarks in *Rubin,* the "critical and necessary" element remains an important element of the Florida law of collateral estoppel, and Courts do not necessarily apply the *Vickers* holding in all circumstances. Estoppel is, of course, "founded on equitable considerations" in Florida courts, *Avant v. Hammond Jones, Inc.,* 79 So.2d 423, 424 (Fla.1955), as well as in federal courts.

### 3. *In re Wald*

In *In re Wald,* 208 B.R. 516 (Bankr. N.D.Ala.1997), the Bankruptcy Court in the Northern District of Alabama concluded that federal law rather than the collateral estoppel law of the state should apply in a bankruptcy dischargeability proceeding. The parties in the instant case did not assert that any law other than Florida law should be applied to determine the collateral estoppel effect of the Florida state court judgment, and the Court does not address the position that federal rather than Florida law should be applied. However, the Court notes *Wald* because it discusses extensively the uniqueness and the significance of the application of collateral estoppel in bankruptcy dischargeability matters.

### Conclusion

To apply the doctrine of collateral estoppel under Florida law, it must be shown that an issue was a "critical and necessary" part of the judgment entered in the prior proceeding. Where the complaint in the

---

4. The Court referred to the third of the four elements of collateral estoppel under Florida law listed in *In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir.1993).

prior proceeding contains multiple counts, but the final judgment only awards the plaintiff a monetary amount without designating the basis for the judgment, the doctrine of collateral estoppel should not be applied because it cannot be shown that any particular allegations in the complaint were "critical and necessary" to the judgment.

 In this case, the complaint filed by the Plaintiff against the Debtor in state court contained five counts. Only one of the five counts (Count IV) was based on fraud. The Final Judgment, however, stated only that the Plaintiff was entitled to recover the sum of $99,270.27, plus interest. The Final Judgment did not include any findings regarding the allegations of fraud in the complaint. Under these circumstances, the Plaintiff has not shown in this dischargeability proceeding that the count based on fraud was a "critical and necessary" part of the Final Judgment, and the doctrine of collateral estoppel should not be applied to the Judgment.

Accordingly:

**IT IS ORDERED** that the Motion for Reconsideration or Amendment of Findings of Fact, Conclusions of Law and Memorandum Opinion, and Corresponding Final Judgment Entered on September 11, 2000, filed by the Plaintiff, Dimmitt & Owens Financial, Inc., is denied.