**In re Yocis NUNEZ, Debtor.**

**Jose A. Hernandez, Plaintiff,**

v.

**Yocis Nunez, Defendant.**

**Bankruptcy No. 07–17284–BKC–LMI.**
**Adversary No. 07–1876–BKC–LMI.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 17, 2008.

Brandy C Gonzalez–Abreu, Esq., Miami, FL, for Plaintiff.

Robert A. Angueira, Miami, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL JUDGMENT

LAUREL M. ISICOFF, Bankruptcy Judge.

This matter came before me for trial on June 24, 2008. Having considered the testimony, the evidence presented, and all matters in the record that I deemed appropriate and relevant, I make the following findings of fact and conclusions of law in support of final judgment in favor of the Defendant, Yocis Nunez.

### PROCEDURAL HISTORY

This adversary complaint was filed on December 10, 2007, seeking a determination that the debts of Defendant Yocis Nunez ("Debtor" or "Nunez") owed to the

Plaintiff Jose A. Hernandez ("Creditor" or "Plaintiff") are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6), and 11 U.S.C. § 727(a)(2)-(a)(7). The Debtor filed a motion to dismiss the complaint which motion was denied in part and granted in part [DE # 23]. Pursuant to that order, the Plaintiff went forward seeking relief only on the grounds set forth in 11 U.S.C. §§ 523(a)(2) and (a)(6). I conducted a trial after which the parties were invited to file subsequent written closing arguments, which both parties did.

Having considered the evidence and the testimony, the following is a summary of my findings, supplemented where I deem appropriate by the allegations of the parties that I have accepted as credible or, at least, more likely than not. Those facts that I do not address in this opinion I have omitted because I did not rely on them, either because they weren't relevant or they were unbelievable. Of the four witnesses that testified at trial, I found that only the testimony of Henry Rubenstein, an attorney for the Plaintiff, was completely credible.

## FACTS

Yocis Nunez decided to create a business to provide chiropractic services. She leased space at 710 Palm Avenue in Hialeah, Florida and on or about January 5, 2005, formed a company called Healthy Bones Medical Services Corporation ("Healthy Bones"). She contacted the Plaintiff, Jose A. Hernandez, a chiropractor, and after a meeting between Nunez, the Plaintiff, and the father of Nunez's daughter, Gonzalez ("Gonzalez"), Healthy Bones and the Plaintiff entered into a Contractual Agreement Between Physician Provider and Medical Center (the "Contract") on January 24, 2005, pursuant to which the Plaintiff agreed to serve as medical director for the chiropractic clinic. The Plaintiff prepared the contract.

Subsequent to the Plaintiff signing the contract, the Debtor provided the Plaintiff with papers to complete, which information included the Plaintiff's medical license number, which license number, according to the Plaintiff, was critical to Healthy Bones' application for approval by the Florida Agency for Health Care Administration ("AHCA"). While the Plaintiff apparently completed the papers and returned them to the Debtor, it is undisputed that the Debtor never submitted the papers to AHCA and, in fact, never used the Plaintiff's medical license number or the papers signed by the Plaintiff for any purpose.

The Debtor testified that she intended to finance Healthy Bones with money that Gonzalez was going to give her from the sale of one of his trucks. However that sale fell through. On or about January 24, 2005, the Debtor called the Plaintiff to tell him she would not be able to go forward with the contract because she had no money. The Plaintiff claims that when the Debtor told him she was having money problems he offered to negotiate different terms. The Debtor testified that at first the Plaintiff said he would cancel the contract, but then for fifteen days in a row when she went by his office, he wasn't there; no one was there. Whether because the parties failed to agree, or the Plaintiff refused to see the Debtor, no resolution was reached with respect to the Contract. There was no termination provision in the Contract.

At some point the Debtor got the money to start her business. She testified that Gonzalez was finally able to sell a truck. It is also possible that the Debtor got the

financing from Jorge Pulido ("Pulido"), who, some time prior to July 2006,[1] purchased equipment, which purchase was to be a loan to the Debtor.

On March 9, 2005, counsel for the Plaintiff sent a demand letter to the Debtor seeking payment under the Contract. On March 16, 2005, the Debtor dissolved Healthy Bones and incorporated Unlimited Medical Center, Inc. ("Newco"). Newco started operating in the space that had been leased by Healthy Bones. At the time Newco was formed and Healthy Bones was dissolved, Healthy Bones had no assets—no furniture, fixtures or equipment. The Debtor testified that she had signed a one year lease on the Healthy Bones space, so of course she was going to use that space for her new business. The Debtor also claims that she doesn't recall receiving the demand letter, and that her dissolution of Healthy Bones and her formation of Newco had nothing to do with the letter.

Newco went forward with a new medical director and papers were submitted to AHCA on behalf of Newco based on this medical director's information and license. The Debtor testified that, because of the way the Plaintiff had treated her after she tried to cancel the Contract, she wanted nothing to do with him, which is the reason she went forward with a different medical director.

On July 11, 2005 the Plaintiff filed a two count complaint (the "State Court Complaint") against Healthy Bones and Nunez in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida styled "*Jose A. Hernandez v.*

*Healthy Bones Medical Services Corp. and Yocis Nunez,*" Case No.2005–13880 (the "State Court Action"). Count I of the State Court Complaint was for breach of contract based on the termination of the Contract without cause. Count II of the State Court Complaint sought relief based on fraud in the inducement, alleging that Healthy Bones used the Plaintiff's license and then terminated him. Apparently a default was entered on November 4, 2005 and a Default Final Judgment was entered on December 16, 2005. An Amended Default Final Judgment was entered on May 1, 2006 against Nunez and Healthy Bones.

On May 30, 2006, Nunez and Healthy Bones moved to set aside the Default, Default Final Judgment and Amended Default Final Judgment which motion was denied. On June 20, 2006, allegedly without notice to counsel for Healthy Bones and Nunez, the Plaintiff obtained an "Order Granting Plaintiff's Findings that Healthy Bones Medical Services Corp. is in fact Unlimited Medical Center, Inc." On or about July 17, 2006, the police or sheriff went to the premises of Newco to seize assets pursuant to a writ of execution. Nunez and Healthy Bones filed an Amended Emergency Motion to Set Aside Writ of Execution and for Return of Property Seized based on two grounds—first, the motion to set aside the default had not yet been heard, and second, the assets seized belonged to either Newco or Pulido, identified in the amended emergency motion as a 50% owner of Newco. The motion referenced as an attachment an affidavit signed by Pulido but the copy of the motion admitted into evidence as an exhibit had no attachment. However, I will assume the

---

1. I will address later in this opinion the issue of the Pulido Affidavit (hereinafter defined)

and the conflicting testimony regarding dates.

referenced exhibit is the affidavit of July 18, 2006, signed by Jorge Pulido that was separately admitted into evidence at trial (the "Pulido Affidavit").

According to the Pulido Affidavit, Pulido was a 50% owner of Newco, and had formed Newco with the Debtor on March 16, 2005. The effect of this affidavit was, apparently, to temporarily interfere with a sheriff's execution on the assets of Newco since, pursuant to the Pulido Affidavit, Nunez was only a part owner of Newco and therefore the assets of Newco could not be unconditionally liable for the obligations of Nunez and Healthy Bones.[2]

On January 22, 2007, the state court denied the motion to vacate the default and entered an Order Granting a Motion for Contempt and for Sanctions (in the form of attorney fees and costs to be awarded later). On March 1, 2007, the state court granted the Plaintiff's Motion to Implead Pulido post-judgment. A Second Amended Default Final Judgment was entered on March 20, 2007 against Nunez, Healthy Bones, Pulido, and Newco.

At some point, the Plaintiff was able to execute on the Second Amended Default Final Judgment, and other than some computers and furniture that the Plaintiff testified he chose not to take, the Plaintiff took all the assets of Newco and currently holds them in a warehouse. The Plaintiff testified that he has tried unsuccessfully to sell the assets but he has no idea what they are worth. The Debtor testified that once the Plaintiff executed on the Second Amended Default Judgment, Newco was shut down and went out of business.

Nunez filed bankruptcy on September 5, 2007. The Plaintiff did not file a claim because this bankruptcy case is a no-asset case. The Plaintiff filed this adversary proceeding[3] seeking a holding that the Second Amended Default Final Judgment is not dischargeable.

### COLLATERAL ESTOPPEL

At trial the Plaintiff's counsel asserted for the first time that he may rely on collateral estoppel and that, since the state court complaint alleged fraudulent inducement, "collateral estoppel precludes relitigation of the count for fraudulent inducement." The Debtor's counsel objected to the Plaintiff raising this previously unplead argument after the start of trial. However, even were I to find that the collateral estoppel argument was not waived, the Plaintiff's argument is misplaced and the Plaintiff is not be entitled to rely on collateral estoppel with respect to the Second Amended Default Final Judgment.

---

**2.** Both Nunez and Pulido disavowed the accuracy of the Pulido Affidavit. Nunez and Pulido each testified they never met before 2006 and that Pulido was never an owner of Newco. Rather Pulido bought the equipment Newco was using in the Newco premises. Neither Pulido nor the Debtor speaks English; each claims he or she relied on the Debtor's attorney who just told them the affidavit was to help Pulido protect his interest in the equipment. I believe the Debtor and Pulido knew what the affidavit said. I believe it is more likely the affidavit contained false information provided by Pulido or the Debtor or both, but resolution of these facts are not relevant to my holding. I am not, however, suggesting the Debtor's state court lawyer knowingly submitted a false affidavit in the State Court Action.

**3.** The Plaintiff pursued the same claim against Nelson Pulido who also filed bankruptcy. The Plaintiff filed an adversary proceeding seeking determination that Pulido's debt was non-dischargeable as well but that adversary proceeding was recently dismissed with prejudice.

■ Res judicata, or claim preclusion, prevents a party from relitigating any claim that was resolved, or that could have been raised, in a prior proceeding. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541 (11th Cir.1986); *Fla. Dep't of Transp. v. Juliano,* 801 So.2d 101 (Fla. 2001). Collateral estoppel, or issue preclusion, prohibits a party from relitigating issues of fact or law that were litigated in a prior court proceeding so long as the parties are identical, the issues are identical, and the matter has been fully litigated in a court of competent jurisdiction. *U.S. v. Weiss,* 467 F.3d 1300 (11th Cir.2006); *Starr Tyme v. Cohen,* 659 So.2d 1064 (Fla. 1995); *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano,* 450 So.2d 843 (Fla.1984); *Mobil Oil Corp. v. Shevin,* 354 So.2d 372 (Fla.1977).

■ The res judicata effect of a prior state court judgment may not be raised in connection with a dischargeability action in bankruptcy. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).[4] Conversely "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See also Brown v. Felsen,* 442 U.S. at 139, n. 10, 99 S.Ct. 2205 ("If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [predecessor to 11 U.S.C. § 523(a)], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.").

■ When applying collateral estoppel in the context of a Florida state court judgment, the Florida law of collateral estoppel applies. *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672 (11th Cir. 1993); *Dimmitt & Owens Fin., Inc. v. Green (In re Green),* 262 B.R. 557 (Bankr. M.D.Fla.2001). Of course, "the standard of proof in the prior [state court] action must have been at least as stringent as the standard of proof in the later case." *In re St. Laurent,* 991 F.2d at 676.

■ Under Florida law, even "[a] pure default judgment, entered when there is no participation by the defendant, is sufficient to satisfy the 'actually litigated' element of collateral estoppel under Florida law." *Lang v. Vickers (In re Vickers),* 247 B.R. 530, 535 (Bankr.M.D.Fla.2000). *Accord Dimmitt & Owens Fin., Inc. v. Green (In re Green),* 262 B.R. 557; *Lasky v. Itzler (In re Itzler),* 247 B.R. 546 (Bankr. S.D.Fla.2000).

■ The Second Amended Default Final Judgment was a general judgment in favor of the Plaintiff:

IT IS ADJUDGED that Plaintiff, Jose A. Hernandez, d/b/a Comprehensive Natural Health, 3001 S.W. 111th Avenue, Miami, Florida, recover from Defendants Healthy Bones Medical Services, Corp., 710 Palm Avenue, Hialeah, Florida, 33010, Yocis Nunez, 710 Palm Avenue, Hialeah, Florida, 33010, Jorge Pulido, at 8923 NW 174th Street, Miami, Florida 33018, and unlimited Medical Center, Inc. at 710 Palm Avenue, Hialeah, Florida, 33010, the sum of $66,800.00 on principal, the sum of $256.00 for court costs, the sum of $50.00 for process server fees, the sum of $1080.00 for Sheriff's fees, the sum of

---

4. Since the cause of action arising under 11 U.S.C. § 523 does not exist in the absence of a bankruptcy case, it is impossible for the cause of action to be litigated or raised in a pre-petition non-bankruptcy procedure.

$2,890.00 for attorney's fees with costs, sanctions in an amount to be determined at a subsequent Evidentiary Hearing, and prejudgment interest in the sum of $8,699.46, making a total of $79,775.46, excluding sanctions, that shall bear interest at the rate of 11% a year FOR WHICH LET EXECUTION ISSUE, FORTHWITH.

There is no reference in the Second Amended Default Final Judgment (or in any of its predecessor judgments) to a specified count—that is, there is no indication whether the judgment was entered based on the breach of contract count or the fraudulent inducement count. There is some debate in the courts whether, in the absence of some indication by the state court, all facts plead in a complaint have collateral estoppel effect in a subsequent dischargeability action. *Compare In re Vickers*, 247 B.R. 530 *with In re Green*, 262 B.R. 557. However, I do not need to determine that issue for purposes of this proceeding.[5]

■ The facts alleged by the Plaintiff in the State Court Complaint, even if all the facts are deemed to be binding on the Debtor, do not demonstrate the Plaintiff is entitled to relief under section 523(a)(2)(A). The Plaintiff's conclusory statement "collateral estoppel precludes relitigation of the count for fraudulent inducement" is wrong. Collateral estoppel precludes relitigation of the underlying facts in the State Court Complaint. The Plaintiff's argument regarding "the count for fraudulent inducement" seeks relief based on claim preclusion, which, I have already noted, is not available. The facts in the State Court Complaint allege that Healthy Bones induced the Plaintiff to perform services, that those services included using the

Plaintiff's license, and once Healthy Bones used those services "[Healthy] Bones terminated Hernandez's employment in breach of contract, which apparently Bones never intended to fulfill." A breach of contract action does not, in the absence of some other act described, or proscribed, by 11 U.S.C. § 523(a) give rise to a nondischargeable debt. *See In re Whiters*, 337 B.R. 326, 338 (Bankr.N.D.Ind.2006); *Cloyd v. GRP Records (In re Cloyd)*, 238 B.R. 328, 336 (Bankr.E.D.Mich.1999).

Thus, even if the allegations of the State Court Complaint are fully binding, those facts do not entitle the Plaintiff to relief under section 523(a).

## NON–DISCHARGEABILITY AND SECTION 523(a)(2)(A)

■ The Plaintiff argues that the Second Amended Default Final Judgment is non-dischargeable by virtue of 11 U.S.C. § 523(a)(2) because Nunez obtained a benefit from the use of the Plaintiff's medical license under false pretenses, and because Nunez wrongfully interfered with the Plaintiff's ability to collect the Amended Default Final Judgment.

The complaint alleges that Nunez formed Healthy Bones to perpetrate a fraud on creditors and the State of Florida by concealing the identity of the true owner—Pulido—who, as a convicted felon, could not be the registered owner of any medical facility in Florida. The complaint further alleges that, four days after signing the contract with the Plaintiff, Nunez and Pulido realized "Hernandez was both too honest and too knowledgeable to assist Nunez and Pulido on their ongoing fraud" and therefore Nunez and Pulido terminated the Contract without cause. While the complaint did not allege that the Pulido

---

**5.** Were it necessary to do so, I am persuaded by Chief Judge Glenn's analysis in *In re Green*.

Affidavit interfered with the collection of the Amended Default Final Judgment, there was testimony regarding this allegation at trial to which testimony no objection was raised.

Section 523(a)(2)(A) provides that a bankruptcy discharge under section 727

[D]oes not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

In order for a creditor to demonstrate that a claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), a plaintiff must demonstrate by a preponderance of the evidence that "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *SEC v. Bilzerian (In re Bilzerian)*, 153 .F.3d 1278, 1281 (11th Cir.1998). Moreover, because the statute requires that the money, property or services were "obtained by" the described wrongful acts, the creditor must demonstrate "that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with its money, property or services." *Valley Mem'l Homes v. Hrabik (In re Hrabik)*, 330 B.R. 765, 772 (Bankr.D.N.D.2005).

The Plaintiff argues he is entitled to relief under section 523(a)(2)(A) because the Debtor executed the Contract with the Plaintiff without ever intending to perform the agreement, but solely so she could get his medical license for the AHCA application. Originally the Plaintiff also argued that the Debtor and Pulido entered into a scheme to commit Medicare fraud, that Pulido was a partner of the Debtor in Healthy Bones from the beginning, and that the fraud included the Debtor concealing Pulido's involvement (which would have been problematic as Pulido has a felony conviction, thereby preventing his involvement in a facility licensed by AHCA). However, in neither his opening statement nor his closing statement did the Plaintiff pursue this theory. Even if the Plaintiff had done so, these allegations are based purely on the Plaintiff's speculation. Moreover, even if the Pulido Affidavit were true, that is, that Pulido became involved in March 2005, I find that Pulido became involved with Nunez at the earliest after the Contract was signed. The Plaintiff never provided any evidence, or, indeed any plausible explanation why, even if the Debtor were involved with Pulido when the Contract was signed, how that had anything to do with the breach of Contract or the Second Amended Default Final Judgment. Indeed, the Plaintiff did not even know Pulido existed until July 2006, eighteen months after the Contract was signed, one year after the State Court Complaint was filed and two months after the Amended Default Final Judgment was entered. The Plaintiff has not provided any explanation or theory (let alone a *plausible* explanation or theory) why the Debtor would have intentionally entered into a Contract with the Plaintiff with no intention of performing under the Contract. Finally, it is undisputed that the Debtor never used either the Plaintiff's medical license or the AHCA application that he signed.

The Plaintiff also argued at trial that the Debtor misrepresented her financial ability to perform the Contract, which misrepresentation is evidenced by her subsequent hiring of another medical director for Newco. However, other than pure speculation on the Plaintiff's part, the Plaintiff provided no evidence whatsoever that the Debtor misrepresented her financial condition. Since the Plaintiff never asked about the Debtor's finances, whether or not she disclosed that the opening of the business was contingent on a truck sale is irrelevant. Despite my concerns regarding the Debtor's credibility, I find that the Debtor did not falsely misrepresent her financial situation to the Plaintiff with the intent to deceive him. I believe that at the time the Debtor signed the contract she believed she had the ability to perform the Contract. Moreover, the Plaintiff clearly did not rely on the Debtor's financial ability to perform the Contract.

The Plaintiff also argues that he is entitled to relief under section 523(a)(2)(A) because the Debtor closed Healthy Bones and opened Newco on the same day, right after he had sent his demand letter and, consequently, this fraudulent transfer of assets wrongfully interfered with the Plaintiff's right to enforce the Contract. The Plaintiff also asserts that he is entitled to relief under section 523(a)(2)(A) because the fraudulent transfer is, itself, evidence of fraud. While it might be true that Debtor closed Healthy Bones and opened Newco on the same day with the intent to avoid the Contract with the Plaintiff, the only evidence before me is that Healthy Bones had no assets other than the lease at the time the Debtor formed Newco; the lease was not transferred. Thus, the Plaintiff sustained no loss on account of the alleged fraudulent conduct. The switch did not cause the Plaintiff harm.

Indeed, one could argue that the Debtor's otherwise allegedly wrongful acts benefited the Plaintiff, since he ultimately was able to execute on his judgment against the assets of Newco, which assets, according to undisputed testimony, had not belonged to Healthy Bones.

The Plaintiff was required to prove by a preponderance of the evidence every element of section 523(a)(2)(A). I find that the Plaintiff has failed to meet his burden as to any element and so I will enter judgment in favor of the Debtor on this issue.

### NON–DISCHARGEABILITY AND SECTION 523(a)(6)

The Plaintiff argues that his claim is not dischargeable by virtue of section 523(a)(6) because the Debtor interfered with his collection of the Amended Default Final Judgment by filing, and relying on, the Pulido Affidavit. A creditor is entitled to a determination that a debt is not dischargeable pursuant to section 523(a)(6) if that debt arises from "willful and malicious injury by the debtor to another entity or to the property of another entity." Herein lies the problem for the Plaintiff—he has suffered no injury.

In support of his prayer for relief, the Plaintiff relies on the argument that the Debtor interfered with his execution of the Amended Default Final Judgment. The Amended Default Final Judgment stems from the execution of the Contract. The Plaintiff testified at trial that he, in fact, ultimately did execute on the Amended Default Final Judgment against all the assets of Newco, except for those assets that he voluntarily chose not to take. This is not disputed by the Debtor. While the Pulido Affidavit appears to have delayed efforts by the sheriff to execute on the

assets of Newco, the Plaintiff ultimately received what he was entitled to. The Plaintiff has not suggested, nor presented any evidence, that the Plaintiff has been unable to sell the assets that he seized because of any wrongdoing by the Debtor. I have already found, for the reasons stated above, that the dissolution of Healthy Bones and the creation of Newco did not cause the Plaintiff injury, and therefore this event does not entitle the Plaintiff to relief under section 523(a)(6).

Accordingly, I do not need to address whether, and under what circumstances, interference with the collection on a judgment might create a non-dischargeable debt. When there is no injury, there is nothing to discharge or not discharge. Accordingly, the Debtor is entitled to judgment in her favor with respect to the claim of non-dischargeability under section 523(a)(6).

Counsel for the Defendant is instructed to submit a final judgment consistent with this opinion.